IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

07 JUN -4 PM 12:51

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CW

E-Filing

JOHN ANTHONY DUKE SR.,

      PETITIONER,

     v.

JIMMY WALKER,

      RESPONDENT,

ACTING WARDEN AT C.S.P. Sac IV

C 07 2882

CASE No. _____

(To be provided by the Clerk
of the Court)

PETITION FOR A WRIT
OF HABEAS CORPUS

From The Decision of The California
State Supreme Court
Filed April 26, 2006

PETITIONER PROCEEDING
WITH PERMISSION
IN FORMA PAUPERIS

TABLE OF CONTENTS

TABLE OF AUTHORITIES CITED                                    -ii·

APPLICATION TO PROCEED IN FORMA
PAUPERIS (in its own numerical
order, pages 1-5)

DECLARATION OF SEAN P. MOORE H-80268                         -iii·

A LETTER TO THE HONORABLE JUDGE OF THIS COURT
and attached thereto, copies of Petitioner's
Mental Health Prescriptions                                  -iiii-

REQUEST FOR APPOINTMENT OF COUNSEL                         -iiiii-

PETITION FOR A WRIT OF HABEAS CORPUS
and Related Information For The COURT                        1-6,

CLAIM ONE                                                      6,
(Continued on Petitioner's additional pages attached
 as p.p. 1)

CLAIM ONE SUPPORTING FACTS                                     6,
(Continued on Petitioner's page (s) 1-8)

CLAIM TWO                                                      6,
(Continued on Petitioner's additional pages attached as p.p. 9)

CLAIM TWO SUPPORTING FACTS                                     6,
(Continued on Petitioner's additional pages attached
 as p.p. 9-12)

CLAIM THREE                                                    6,
(Continued on Petitioner's additional pages attached as p.p. 13

CLAIM THREE SUPPORTING FACTS                                   6,
(Continued on Petitioner's additional pages attached as p.p. 13-15)

PETITIONER'S FINAL PRAYER FOR RELIEF                           7,

PROOF OF SERVICE BY MAIL                                      ·8,

## TABLE OF AUTHORITIES CITED

Cases                                                                      Page

People v. Guillebeau (1980) 107 Cal App 3d 537                            p.p.
Strickland v. Washington (1984) 466 U.S. 668, 684-685                     p.p.
People v. Pope (1979) 23 Cal 3d 412, 423-424                              p.p.
In Re Neely (1993) 6 Cal 4th 901, 908                                     p.p.
People v. Ledesma (1987) 43 Cal 3d 171, 218                              p.p.
People v. Fosselman 23 Cal at p. 426                                      p.p.
People v. Bloom (1989)48 Cal 3d 1194, 1213-1214                           p.p. 1
People v. Guerra (1985) 40 Cal 3d 377, 383-385                           p.p. 1
People v. Medina (1990) 51 Cal 3d 870, 899-900                           p.p. 1
People v. Fierro (1991) 1 Cal 4th 173, 204                                p.p. 1
People v. Marsden (1970) 2 Cal 3d 118                                     p.p. 1

DECLARATION OF SEAN P. MOORE H-80268

1    I, Sean P. Moore H-80268, depose and state that I am a prisoner

2  incarcerated at C.S.P. Sac IV and that I have prepared and typed

3  out the Habeas Corpus Petition attached hereto for Mr. John Duke Sr.

4  the petitioner therin. I have prepered and typed the attached pet-

5  ition because Mr. Duke Sr. is mentally disable to the point of not

6  being able to prepare, write-out or type up any kind of an appeal/

7  grievance or writ in his criminal case, wherefor I have attached to

8  this declaration a copy of ; 1) A letter Mr. Duke Sr. has written

9  to the Honorable Justice of this Federal Court which is in reference

10  to his family's history of "Mental Illness" and "Disabilities", and

11  his request for help from this Honorable Courts Justice. 2) Mr.

12  Duke Sr.'s medication prescription for treatment of his mental dis-

13  abilityand chemical imbalance as well as his participation in the

14  CCCMS MHSDS rehabilitation care here at C.S.P. Sac IV, as an offer

15  of proof to this Honorable Court of his mental disability which is

16  in fact a disability Mr. Duke Sr. possessed long before his criminal

17  conviction in this case, as is evident in his "Record on Appeal".

18    I declare under penalty of purjury that the foregoing is true

19  and correct as to my knoledge according to Mr. Duke Sr.'s "Record

20  on Appeal", his "Direct Appeals", and his "Petition for Review"

21  filed in the Calfornia Courts.

22

23                    Respectfully Submitted,

24

25                    _Sean Moore_ H-80268
                      Sean P. Moore H-80268

26

27    Date: 5-29-07
          cc: C-1- 120

28

-iii-

2

Dear Judge,

1        My name is John Duke Sr. and I am writting you to ask for
2    your help ? I am filing a Writ of Habeas Corpus, I have two other
3    people to help me because I don't know what I am doing. One of the
4    people who has helped me file this writ is Sean P. Moore, he has
5    prepared this writ, explained it to me as best he could and he is
6    not trianed in the law, but has agreed to help me because I have
7    mental problems, I am in the CCCMS program here at Sacramento, also
8    I have a family history of mental problems. My Older brother Bret
9    Duke put a gun in his mouth and killed himself in 1998, my little
10   brother Marcus Duke overdosed on drugs and alchohol and died in 1999
11   because of mental problems, and my older sister Cindy Duke is on SSI
12   because she is "unstable" and also has mental problems.

13       I am currently on medcation for hearing vioces and depression
14   and I really need your help with an attorney to help me with the
15   court. If you could please find it in your heart to help me.

16                             Thank You !
17                             John Duke SR P-97706
18                             Joun Duke Sr.
19
20
21   Date: 5-29-07
22   Cc; C-1-104
23
24
25
26
27
28

2                                 -iiii-

CALIFORNIA DEPARTMENT OF COI       TIONS
Psychiatric Medications Informed Consent

Facility:  <u>California State Prison—Sacramento</u>

My physician, Dr. _____, has recommended the medication _____ for the treatment of my mental problem(s).  The doctor has discussed the reasons why the above medication may be helpful, including the likelihood of the problem(s) improving or not improving with and without medication.  I understand that medication will usually be given by mouth and that staff will observe my actually swallowing the medication.  I have been told that the dosage of the medication may be adjusted and that the dosage may range from ____ mg per day to a maximum of ____ mg per day.  Additional doses of this same type may be given, dependent on the staff's assessment of my behavior and my reported response to the medication.

The length of time this medication will be prescribed for me is dependent on my response to the medication.  The physician has provided me a best estimate of my need for psychiatric medication and the length of time I am likely to be taking such medication.  As with all medication, there may be side effects.  I understand that I am to tell the staff if I have side effects, as in some cases side effects can be reduced by lowering the dose of medication or using another medication.  The side effects checked below <u>may</u> occur.

| | | | |
|---|---|---|---|
| ☑ Heat Risk (Hyperthermia) | ☐ Tremors | ☐ Dry Mouth | ☐ Decreased Sex Drive |
| ☐ Nausea | ☐ Rigidity of Neck | ☐ Thirst | ☐ Liver Damage |
| ☐ Diarrhea | ☐ Low Blood Pressure | ☑ Increased Heart Rate | ☐ Kidney Damage |
| ☐ Constipation | ☐ Dizziness | ☐ Restlessness | ☐ Habit Forming |
| ☐ Heartburn | ☐ Weight Gain | ☐ Slowed Reflexes | ☐ Physical Dependence |
| ☐ Blurry Vision | ☐ Weight Loss | ☐ Trouble Urinating | ☐ _____ |
| ☐ Drowsiness | ☐ Skin Rash | ☐ Frequent Urination | ☐ _____ |
| ☑ Muscle Stiffness | ☐ Metallic Taste | ☐ Sun Sensitivity | ☐ _____ |

☑ I have been told that this medication may produce persistent involuntary movements of the face or mouth and at times similar movements of the hands and feet.  This condition is called Tardive Dyskinesia and in certain cases these symptoms appear to be irreversible and may even appear after the medication has been stopped.

☑ I understand that I may change my decision to accept medication at any time by telling any member of the treatment team.  Should I decide to stop or to decrease my psychiatric medication, I have been informed to do this under the guidance of staff and not to stop medication suddenly.

☑ I have been told to avoid alcohol.

☐ I am aware that this consent will be placed in my Health Record.

☐ I want a copy of this consent for my own records.

☐ I want more printed information on this medication.

☐ I agree to take the psychiatric medication as prescribed.

_____ _John Duke SR_ _____
Inmate-Patient's Signature

Prescribed for:   _Duke, SR_      _JOHN_      _P-97706_      _Englsh_
Last Name            First Name         CDC#           Primary Language

Does this inmate have the ability to read, comprehend, and speak English?  ☑ Yes   ☐ No

Comment: _____

Medical/legal status of inmate-patient:

☐ Willing to take medication and understands the above.

☐ Willing to take but refuses to sign the form.  Verbal consent given _____ (Physician's initial)

☐ Emergency medication given as authorized by PC 2600.

☐ PC 2600 procedures started (date): ___/___/___ with _____ PC 2600 coordinator.

☐ PC 2600 case, medication explained.

☐ Inmate-patient appeared to understand.

☐ Inmate-patient did not comprehend.

_M McGhee MD_                    _M McGuaDDas_        _5.3.05_
Physician's Signature            Print Physician's Name and Title    Date

_M McGhee MD_                                        _5.3.05_
Witness's Signature              Print Witness's Name and Title      Date

CALIFORNIA DEPARTMENT OF CORRECTIONS
Psychiatric Medications Informed Consent

Facility:  California State Prison—Sacramento

My physician, Dr. _____, has recommended the medication _____ for the treatment of my mental problem(s).  The doctor has discussed the reasons why the above medication may be helpful, including the likelihood of the problem(s) improving or not improving with and without medication.  I understand that medication will usually be given by mouth and that staff will observe my actually swallowing the medication.  I have been told that the dosage of the medication may be adjusted and that the dosage may range from ____ mg per day to a maximum of ____ mg per day.  Additional doses of this same type may be given, dependent on the staff's assessment of my behavior and my reported response to the medication.

The length of time this medication will be prescribed for me is dependent on my response to the medication.  The physician has provided me a best estimate of my need for psychiatric medication and the length of time I am likely to be taking such medication.  As with all medication, there may be side effects.  I understand that I am to tell the staff if I have side effects, as in some cases side effects can be reduced by lowering the dose of medication or using another medication.  The side effects checked below may occur.

| | | | |
|---|---|---|---|
| ☐ Heat Risk (Hyperthermia) | ☐ Tremors | ☐ Dry Mouth | ☐ Decreased Sex Drive |
| ☐ Nausea | ☐ Rigidity of Neck | ☐ Thirst | ☐ Liver Damage |
| ☐ Diarrhea | ☐ Low Blood Pressure | ☐ Increased Heart Rate | ☐ Kidney Damage |
| ☐ Constipation | ☐ Dizziness | ☐ Restlessness | ☐ Habit Forming |
| ☐ Heartburn | ☐ Weight Gain | ☐ Slowed Reflexes | ☐ Physical Dependence |
| ☒ Blurry Vision | ☐ Weight Loss | ☐ Trouble Urinating | ☐ _____ |
| ☐ Drowsiness | ☐ Skin Rash | ☐ Frequent Urination | ☐ _____ |
| ☐ Muscle Stiffness | ☐ Metallic Taste | ☐ Sun Sensitivity | ☐ _____ |

☐ I have been told that this medication may produce persistent involuntary movements of the face or mouth and at times similar movements of the hands and feet.  This condition is called Tardive Dyskinesia and in certain cases these symptoms appear to be irreversible and may even appear after the medication has been stopped.

☒ I understand that I may change my decision to accept medication at any time by telling any member of the treatment team.  Should I decide to stop or to decrease my psychiatric medication, I have been informed to do this under the guidance of staff and not to stop medication suddenly.

☒ I have been told to avoid alcohol.

☐ I am aware that this consent will be placed in my Health Record.

☐ I want a copy of this consent for my own records.

☐ I want more printed information on this medication.

☐ I agree to take the psychiatric medication as prescribed.

_____ John Duke SR
Inmate-Patient's Signature

Prescribed for: __Duke, Sr__  __Jutial__  __P-97706__  __English__
                Last Name      First Name     CDC#        Primary Language

Does this inmate have the ability to read, comprehend, and speak English?  ☒ Yes    ☐ No

Comment: _____

Medical/legal status of inmate-patient:

☐ Willing to take medication and understands the above.

☐ Willing to take but refuses to sign the form.  Verbal consent given _____. (Physician's initial)

☐ Emergency medication given as authorized by PC 2600.

☐ PC 2600 procedures started (date): __/__/__ with _____ PC 2600 coordinator.

☐ PC 2600 case, medication explained.

☐ Inmate-patient appeared to understand.

☐ Inmate-patient did not comprehend.

_____          M. MOEHADDAS          5/3/05
Physician's Signature     Print Physician's Name and Title     Date

_____                                 5/3/05
Witness's Signature      Print Witness's Name and Title        Date

1
2
3
4
5

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9

| In re | REQUEST FOR APPOINTMENT |
| John Duke Sr. | OF COUNSEL AND |
| On Habeas Corpus | DECLARATION OF INDIGENCY |

10
11

12
13
14
15

   I, John Duke Sr., declare that I am the petitioner to the above-referenced matter, that I am incarcerated at C.S.P. Sac IV Prison, and that I am indegent and unable to afford counsel. My total assets are $oo.oo and my monthly income is $oo.oo per month.

16
17

   I hereby request that counsel be appointed in this matter so that my interests may be protected by the professional assistance required.

18
19
20

   I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed on    , at , California.

21
22
23

_John Duke SR P-97706_
John Duke Sr.

24
25

Date: 5-29-07
CC: C-1-104

26
27
28

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name   Duke Sr.         John              A.
            (Last)                (First)                (Initial)

Prisoner Number   C.D.C. # P-97706

Institutional Address   C.S.P. Sac IV P.O. Box 290066

Represa, Ca 95671-0066

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

John Anthony Duke Sr.                                    )
(Enter the full name of plaintiff in this action.)      )
                                                         )
                      vs.                                )
                                                         )   Case No. _____
                                                         )   (To be provided by the clerk of court)
Jimmy Walker                                             )
                                                         )   **PETITION FOR A WRIT**
            Respondent                                   )   **OF HABEAS CORPUS**
                                                         )
                                                         )
_____                        )
                                                         )
_____                        )
(Enter the full name of respondent(s) or jailor in this action)  )
_____                        )

Read Comments Carefully Before Filling In

When and Where to File

         You should file in the Northern District if you were convicted and sentenced in one of these

counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

this district if you are challenging the manner in which your sentence is being executed, such as loss of

good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

         If you are challenging your conviction or sentence and you were not convicted and sentenced in

one of the above-named fifteen counties, your petition will likely be transferred to the United States

District Court for the district in which the state court that convicted and sentenced you is located.  If

you are challenging the execution of your sentence and you are not in prison in one of these counties,

your petition will likely be transferred to the district court for the district that includes the institution

where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1    Who to Name as Respondent

2         You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6         If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10   A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11        1. What sentence are you challenging in this petition?

12        (a)    Name and location of court that imposed sentence (for example; Alameda

13               County Superior Court, Oakland):

14        <u>Contra Costa County Superior Ct. Martinez</u>

15               Court                              Location

16        (b)    Case number, if known ___<u>011058-8</u>___

17        (c)    Date and terms of sentence <u>May 21, 2004 Life Without</u>

18        (d)    Are you now in custody serving this term? (Custody means being in jail, on

19               parole or probation, etc.)       Yes <u>X</u>    No ____

20               Where?

21               Name of Institution: <u>C.S.P. Sac Iv</u>

22               Address: <u>P.O. Box 290066 Represa, Ca 95671-0066</u>

23        2. For what crime were you given this sentence? (If your petition challenges a sentence for

24   more than one crime, list each crime separately using Penal Code numbers if known. If you are

25   challenging more than one sentence, you should file a different petition for each sentence.)

26   <u>First Degree Murder (187) deadly weapon 190.2, subd. (a) (17)</u>

27   <u>12022, (b)(1), robbery (211&212.5), Burglary (459-460)</u>

28   <u>elder abuse 368, subd.(b) (1) & 12022, subd. (b) (1).</u>

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

Arraignment:                          Yes __X__     No _____

Preliminary Hearing:                  Yes __x__     No _____

Motion to Suppress:                   Yes __?__     No _____

4. How did you plead?

Guilty _____     Not Guilty __X__     Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury __x__     Judge alone_____     Judge alone on a transcript _____

6. Did you testify at your trial?                Yes _____     No _____

7. Did you have an attorney at the following proceedings:

(a)     Arraignment                    Yes __X__     No _____

(b)     Preliminary hearing            Yes __x__     No _____

(c)     Time of plea                   Yes __X__     No _____

(d)     Trial                          Yes __X__     No _____

(e)     Sentencing                     Yes __X__     No _____

(f)     Appeal                         Yes __X__     No _____

(g)     Other post-conviction proceeding    Yes __X__     No _____

8. Did you appeal your conviction?               Yes __X__     No _____

(a)     If you did, to what court(s) did you appeal?

Court of Appeal                        Yes __X__     No _____

Year: _2006_          Result: _Affirmed_____

Supreme Court of California            Yes _____     No _____

Year: _____          Result:_____

Any other court                        Yes _____     No _____

Year: _____          Result:_____

(b)     If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

petition?                                    Yes __X__     No____

(c)     Was there an opinion?                Yes _____    No____

(d)     Did you seek permission to file a late appeal under Rule 31(a)?

                                             Yes _____    No_X___

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to
this conviction in any court, state or federal?           Yes _____    No__X__

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that
challenged the same conviction you are challenging now and if that petition was denied or dismissed
with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit
for an order authorizing the district court to consider this petition. You may not file a second or
subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28
U.S.C. §§ 2244(b).]

(a)     If you sought relief in any proceeding other than an appeal, answer the following

        questions for each proceeding. Attach extra paper if you need more space.

I.      Name of Court: _____

        Type of Proceeding: _____

        Grounds raised (Be brief but specific):

        a._____

        b._____

        c._____

        d._____

        Result: _____Date of Result:_____

II.     Name of Court: _____

        Type of Proceeding: _____

        Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1         a._____

2         b._____

3         c._____

4         d._____

5         Result: _____Date of Result:_____

6     III.    Name of Court: _____

7         Type of Proceeding: _____

8         Grounds raised (Be brief but specific):

9         a._____

10         b._____

11         c._____

12         d._____

13         Result: _____Date of Result:_____

14     IV.    Name of Court: _____

15         Type of Proceeding: _____

16         Grounds raised (Be brief but specific):

17         a._____

18         b._____

19         c._____

20         d._____

21         Result: _____Date of Result:_____

22    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                      Yes _____     No__x__

24      Name and location of court: _____

25 B. GROUNDS FOR RELIEF

26      State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS      - 5 -

1    need more space.  Answer the same questions for each claim.

2        [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5       Claim One: Petitioner was Rendered Inneffective Assistance

6    of Counsel When His Trial Attorney (Cont. on p.p. 1)

7    Supporting Facts: A. The History of Petitioners Plea

8    Petitioner's Plea of Not Guilty By Reason of Insanity

9    (Refered To Hereafter as NGI Plea) (Cont. on p.p.1)

10

11    Claim Two: Petitioners 6th and 14th Amendment Rights To The

12    United States Constitution and The  (Cont. on p.p.9)

13    Supporting Facts: A. The trial Court Judge Errored in allowing

14    petitioner to withdraw his NGI plea without an adequate

15    knowing and intelligent comprehenson that he was likly

16    giving up for all time his right to a (Cont. on p.p.9)

17    Claim Three: Petitioners 6th and 14th Amendment Rights To

18    the United States Constitution and  (Cont. on p.p. 13

19    Supporting Facts: As previously summarized, after the jury ret-

20    urned its verdicts, appellant sent the court a letter

21    in which he complained that he did not understand what

22    happened in his case and, on the issue (Cont. on p.p.13)

23       If any of these grounds was not previously presented to any other court, state briefly which

24    grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS      - 6 -

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_____ Please see "Table of Authorities Cited" _____

_____

_____

Do you have an attorney for this petition?                    Yes_____    No _X_

If you do, give the name and address of your attorney:

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _____5-29-07_____

                        Date

CC: C-1-104

(Rev. 6/02)

Signature of Petitioner

PET. FOR WRIT OF HAB. CORPUS         - 7 -

1  Advised Him That He Could Withdraw His NGI Plea Durig Trial
2  and That It Could Be Reinstated At Any Time Later Auotomatically,
3  Thus, Violating His 6th and 14th Amendment Rights To The United
4  States Constitution and The California Constitution Article 1 § 16
5  and 24

CLAIM 1 SUPPORTING FACTS CONTINUED

6
7  Appellant's NGI PLEA, FIRST ENTERED ON March 24, 2003, was in
8  effect when jury selection began on November 5, 2003. To make sure
9  appellant was adequately advised of the consquences of that plea,
10  the court allowed the prosecutor to explain those consequences in
11  substantial detail, including the possibility that an insanity
12  finding could result in a lifetime commitment to a mental health
13  institution even on conviction of lesser crimes than those charged.
14  After confering with defence counsel, appellant reaffirmed his NGI
15  plea with defence counsel's concurrence.
16  Immediately after this, defence counsel objected to the trial
17  court's announced plan to inform prospective jurors of the NGI plea.
18  Counsel argued that informing the jurors of the insanity plea would
19  deny appellant a fair guilt phase trial on his mental state by un-
20  dermining his chance for a conviction on a lesser crime than first
21  degree murder. When the court expressed concern that appellant law-
22  yers might argue appellant was deprived of a jury oriented to the
23  possibility of sanity proceedings, defence counsel said he would
24  state on the record it was a strategic decision to proceed in that
25  fashion given that the two doctors appointed to examine appellant
26  on the issue of sanity had concluded he was not insane. Counsel
27  further explained that the opinions of the doctors meant appellant
28  had only a small chance of prevailing at the sanity phase, that the

p.p. 1

1  major thrust of the defence was to put almost all of their eggs in
2  the lesser offence basket and to save just an egg or two for the in-
3  sanity basket, and that under those circumstances the jury should
4  not be considering a sanity phase when determining appellant's guilt.
5  Counsel stated that he was so concerned about the potential for an
6  unfair guilt determinatrion that if the court ruled against him he
7  was almopst at the point of considering advising appellant to with-
8  draw his NGI plea.

9      The prosecutor strongly disagreed about keeping the jurors un-
10 aware of the NGI plea and countered defense counsel's prejudice con-
11 tention by arguing, correctly, that People v. Guillebeau (1980) 107
12 Cal.App.3d 537 (Guillebeau hereafter), a case the prosecutor had
13 previously cited to the court, had rejected the defense position.
14 After a lunch break, defense counsel stated he had read Guillebeua
15 and that he viewed it as explicitly stateing: (1) that an NGI plea
16 can be entered at any point in the trial proceedings; and (2) that
17 the way a defense attorney can protect the defendant from the per-
18 cieved danger that the jurors' knowledge of the NGI plea would un-
19 fairly affect their guilt determination was to withdraw the NGI plea
20 for the duration of the guilt trial and then reinstate it later.
21 Based on that reading of Guillebeau, counsel announced that appel-
22 lant wished to withdraw his NGIplea.

23     The court asked if appellant had heard what his lawyer said, and
24 appellant responded that he had. The court then asked if it was
25 appellant's desire to withdraw his NGI plea, if he knew exactly
26 what he was doing and if he had had a chance to talk to his lawyer
27 about it. Appellant said yes to all questions. The court then sta-
28 ted it was making no commitment beyond accepting the withdrawal of

his plea and asked if appellant understood. Appellant said yes, and the court accepted the withdrawal of the NGI plea.

## 2. <u>Defense Counsel's Effort to Reinstate the NGI Plea</u>

The subject of appellant's NGI Plea did not surface again until after the jury began deliberations on December 16th, 2003. Defense counsel raised the NGI plea by reminding the court it was withdrawn at the start of trial based on counsel's reading that Guillebeau said an NGI plea can be entered at any time during trial proceedings and that counsel could properly wait until after the jury came back with its verdict to reinstate the plea. The prosecution voiced strenuous objections ti the defendant entering the plea at that late point in the trial and argued that Guillebeau said an NGI plea can be entered at any time but only for good cause shown, and that there was no good cause based on defense counsel's desire at the begining of trial to prevent the prosecution from being able to voir dire the jury on the sanity issue. Defense counsel formally requested to enter an NGI plea, and the court deferred the matter to the next day.

The next day, defense counsel again relied on Guillebeau to argue, <u>incorrectly</u>, that it held that a tactical withdrawal of an NGI plea at the start of trial to prevent voir dire on the sanity issue and to eliminate a percieved possibility of prejudice in the determination of the degree of guilt is good cause for reinstating the NGI plea at the end of the trial. The prosecutor rejoined, <u>correctly</u>, that Guillebeau held that good cause had to be established for reinstating a withdrawn NGI plea, that it did not say that a tactical withdrawal of the NGI plea at the begining of jury selec-

p.p. 3

1 tion constituted good cause for a later reinstatement of the plea,
2 and argued that the defense had not established good cause.

3    In response, defense counsel aknowledged again that both of the
4 appointed psy chologists concluded appellant was legally sane but
5 argued that these conclusions were based on a faulty premise that
6 drug injestion was the sole basis for the psychotic delusion which
7 both doctors found appellant to be operating under during the time
8 of the crimes. Counsel argued that there was evidence of mental def-
9 ects beyond drug ingestion that contributed to appellant's psychotic
10 state that jurors would have to consider at a sanity trial. Defense
11 counsel urged the court that his tactical decision to have appellant
12 withdraw his NGI plea was based on his belief that Guillebeau said
13 defense fears of prejudice constituted good cause for reinstating
14 the withdrawn plea at the end of the trial. The next day, the court
15 found that the defense had not shown good cause for reinstating the
16 plea and denied appellant's motion.

17
         ### 3. Appellant's Complaints That Counsel Misinformed
18              Him About Reinstatement of His NGI Plea

19    The jury returned its verdict on December 22, 2003. On February
20 9, 2004, appellant sent the court a letter in which he complained
21 that he did not understand anything that had happened in his case.
22 On the issue of the NGI plea, the letter specifically stated that
23 his attorney said when they took the plea off that they could put it
24 back on at any time. On March 12,2004, appellant filed a Marsden
25 motion, heard that same day, in which he repeated this complaint
26 that defense counsel told him when they took off the NGI plea that
27 they could put it back on at any time and that he did not know the
28 court could deny it. Defense counsel responded at the Marsden hear-

1 ing that he believed at the time they withdrew the NGI plea that
2 appellant had the right to have that plea reinstated, and confirmed
3 that he told appellant he had the right to have the NGI plea reins-
4 tated based on his reading of the Guillebeau case.

5    In a second letter to the court, appellant again adressed his
6 NGI PLea. He stated that because he knew he had mental problems the
7 insanity plea should have never been taken off. The court acknow-
8 ledged recieving this letter and said the part about the NGI plea
9 related to issues that would be adressed at the hearing on the mot-
10 ion for a new trial. There, defense counsel <u>again</u> relied on Guille-
11 beau to argue that the tactical withdrawal of appellant's NGI plea
12 based on fears the juror's knowledge of the plea would prejudice
13 their guilt determination constituted good cause for reinstating the
14 NGI plea at the end of the trial. The court denied both, the Marsden
15 Motion and the Motion For New Trial.

16

17                Discussion and Supporting Case Law
18    Petitioner was rendered inneffective assistance of trial counsel
19 by trial counsel's misreading of the Guillebeau case and misadvising
20 petitioner to withdraw his NGI plea. The outcome of petitioners
21 trial would have been different had he not withdrawn his NGI plea.
22    Petitioners trial counsel not only misread the Guillebeau case,
23 and misadvised petitioner to withdraw his NGI plea, but also again
24 relied on the Guillebeau case after an ample amount of time had
25 passed, whereas any competent, aware and alert attorney would have
26 reread Guillebeau and realized the mistake he had made on November
27 5, 2003. Nevertheless, petitioner's trial attorney again on Dec-
28 ember 16, 2003 relied on the Guillebeau case in an attempt to have

1  petitioner's NGI plea reinstated. Worse yet, the prosecution voiced
2  its objections to the petitioner (defendant at that time) entering
3  the NGI plea at that late point, and correctly pointed out that
4  Guillebeau said that an NGI plea can be entered at any time but only
5  for good cause shown, and that there was no good cause based on def-
6  ence counsel's desire at the begining of trial to prevent the pros-
7  ecution from being able to voir dire the jury on the sanity issue.
8  And yet again on the next day, defense counsel relied on the Guill-
9  ebeau case and argued it in open court incorrectly.

10  Artical 1, sections 16 and 24 of the California Constitution
11  and the 6th and 14th Amendments of the United States Constitution
12  guarantees a criminal defendant the right to counsel. This right
13  encompasses not merely the presence of an attorney to represent a
14  defendant; it also entails the _effective_ assistance of counsel (see
15  Strickland v. Washington (1984) 466 U.S. 668, 684-685; People v.
16  Pope (1979) 23 Cal. 3d 412, 423-424.).

17  A petitioner in a Habeas Corpus, bears the burden of demonstr-
18  ating he recieved ineffective assistance of counsel from his att-
19  orney (see In Re Neely, (1993) 6 Cal 4th 901, 908; People v.
20  Ledesma, (1987) 43 Cal. 3d 171, 218.). He must firs show that
21  "counsels representation was defecient in falling below an object-
22  ive standard of reasonablness under prevailing proffessional norms".
23  (In Re Neely, supra, at p. 908 ; See Strickland, supra, 466 U.S. at
24  p. 687.). He must then establish that there is a reasonable prob-
25  ability the out-come would have been different if his attorney had
26  not committed the claimed unproffessional error."A reasonable prob-
27  ability is a probability sufficient to undermine confidence in the
28  out-come". Petitioner must also show his attorney's deficient

1 choices did not have a rational tactical basis. People v. Fosselman,
2 supra, 23 Cal 3d at p 426.

3     Even though the cases sited above do not have issues dealing
4 with petitioner's NGI plea, they do have everything to do with com-
5 petent, alert, aware attorney's operating on an objective standard
6 of reasonableness under prevailing proffessional norms. Petitioner's
7 trial counsel's performance fell far below this to the extent of
8 his misinterpretation of Guillebeau and misadvising petitioner to
9 withdraw his NGI plea. Had petitioner not withdrawn his NGI plea,
10 his right to a jury trial on the sanity issue would have been pre-
11 served. There was (as petitioners trial attorney stated on the rec-
12 ord in open court) evidence of mental defects beyond drug injestion
13 that contributed to petitioner's psychotic state that jurors would
14 have had to consider at a sanity trial had trial counsel not mis-
15 advised petitioner to withdraw his NGI plea at the begining of his
16 criminal trial, and this error on the part of trial counsel cannot
17 be considered to be a tactical decision made by an effective,
18 alert, aware and competent defence attorney.

19     It is petitioners contention that if his NGI plea had not been
20 withdrawn at the begining of his criminal trial, and the above said
21 evidence (evidence of mental defects beyond drug injestion that
22 contributed to his psychotic state) would have been presented to his
23 jurors, there is a reasonable probability the out-come of the jurors
24 verdict would have been different, even to the extent that petit-
25 ioner would not have been found guilty of first degree premeditated
26 murder at all because the elements required to be proven beyond a
27 reasonable doubt simply do not exist, especially when petitioner
28 already suffers from a mental defect and has a substantial family

1 history of mental illness.

2     The record surrounding petitioner's withdrawal of his NGI plea
3 shows that defense counsel's on-the-record summary of Guillebeau in
4 frontof petitioner did not suggest that there would be any barrier
5 to reinstating the NGI plea later in trial. The court's response was
6 to ask petitioner if he had heard what his lawyer said. It did not
7 advise petitioner that his lawyer's interpretation of Guillebeau
8 left out the key caveat that petitioner would be allowed to rein-
9 state his NGI plea at a later point if he persuaded the court there
10 was good cause, and it did not advise petitioner that Guillebeau did
11 not say a defense attorney's desire to keep the jurors in the dark
12 about a possible sanity proceedings constituted good cause to rein-
13 state the NGI plea.

14     Petitioner belives he has shown this Honorable Court that he was
15 rendered ineffective assistance of trial counsel and prays that this
16 Honorable Court grant this Habeas Corpus Writ.

17

18

19

20

21

22

23

24

25

26

27

28

CLAIM II CONTINUED

California Constitution Artical I section (s) 1 and 24 Were Viol-
ated When The Trial Court Errored In Allowing Petitioner To With-
draw His NGI Plea Without An Adequate Knowing and Intelligent Com-
prehension That He Was Likely Giving Up For All Time His Right To
A Jury Trial On His Sanity

### CLAIM II SUPPORTING FACTS CONTINUED

jury trial on his sanity.

As stated in "Claim 1" earlier, the record surrounding petit-
ioner's withdrawal of his NGI plea shows that defense counsel's on-
the-record summary of Guillebeau in front of petitioner did not
suggest that there would be any barrier to reinstating the NGI plea
later in the trial. The courts response was to ask petitioner if he
had heard what his lawyer said. It did not advise petitioner
that his lawyers interpretation of Guillebeau left out the key
caveat that petitioner would only be allowed to reinstate his NGI
plea at a later point if he persuaded the court that there was good
cause, and it did not advise petitioner that Guillebeau did not say
a defense attorneys desire to keep the jurrors in the dark about a
possible sanity proceedings constituted good cause to reinstate
the NGI plea.

The court asked if petitioner had heard what his attorney said,
and petitioner said yes. The court then asked if it was petitioner's
desire to withdraw his NGI plea, if he knew exactly what he was
doing and if he had a chance to talk to his lawyer about it. Petit-
ioner (upon misadvise from his trial attorney) said yes to all ques-
tions. The court then stated it was making no commitment beyond acc-

p.p. 9

1  the withdarwal of petitioner's plea and asked if petitioner under-
2  stood. Petitioner (again, upon his attorney's misadvise) said yes,
3  and the court accepted the withdrawal of petitioner's NGI plea.
4      Petitioner's NGI plea was enetered on March 24, 2003 and was in
5  effect when jury selections began on November 5, 2003. The court
6  accepted petitioner's withdrawal of the said NGI plea in error on
7  that same day.
8      Where the trial court ererd in petitioners case is in failing
9  to ensure that petitioner adequately understood that withdrawing his
10 NGI plea made it unlikely he would ever recieve a trial on the issue
11 of his sanity. Trial counsels misadvise to petitioner was delivered
12 to him and the court in front of the trial court, in open court and
13 was endorsed by the trial court in error in a context in which the
14 court had a duty sua sponte, to ensure that petitioner comprehended
15 what withdrawing his NGI plea would portend. Petitioner's contention
16 here is that the trial court did not live up to that duty when it
17 knew that petitioners trial attorney misinterpreted Guillebeau
18 completely and when petitioner's trial attorney's erroneous expli-
19 nation of Guillebeau went uncorrected by the court, and when the
20 trial court wrongly accepted the withdrawal of petitioner's NGI
21 plea under circumstances that led petitioner to believe that the was
22 not really giving anything up.
23     Besides the fact that petitioner has a mental defect beyond any
24 self ingestion of drugs, he is also not trained in the language of
25 understanding law at all. In the Court of Appeals, petitioner
26 argued that the withdrawal of his NGI plea was not volantary, know-
27 ingly, or intelligent because the trial court failed to correct his
28 trial counsel's misguided interpretation of Guillebeau by warning

1  petitioner that reinstatement of his NGI plea would not be automatic
2  but would depend on establishing good cause. In response, respondent
3  conceded several important points. First, respondent correctly cited
4  the Court of Appeals decisions in People v. Bloom (1989) 48 Cal. 3d
5  1194,1213-1214 and People v. Guerra (1985) 40 Cal. 3d 377, 383-385,
6  for the proposition that "[i]t is clear that a defendendant who has
7  entered a plea of not gui;lty by reason of insanity may freely with-
8  draw that plea if he or she is aware of the consequences"(italics
9  added), and correctly cited People v.Medina (1990) 51 Cal. 3d 870,
10  899- 900, for the proposition that a presently sane defendant may
11  withdraw an insanity plea "provided the court is satisfied that the
12  defendant is making a free and volantary choice with adequate comp-
13  rehension of the consequences."' (Italics added.) Second, respondent
14  conceded that trial counsel's interpretation of Guillebeau was in
15  fact wrong because the case did not say that good cause to reinstate
16  the plea automatically existed if the plea was based on defense cou-
17  nsel's tactical desire to hide from the jurrors the possibility of
18  sanity proceedings.

19  Respondent's concessions are important because the record of the
20  plea withdrawal shows that petitioner did not have an adequate comp-
21  rehension of the consequences of withdrawing his plea because he
22  was affirmatively misinformed about the consequences. Defense coun-
23  sel expressly spread his misunderstanding of Guilebeau on the rec-
24  ord, and that misunderstanding was endorsed by the court when it
25  asked petitioner if he had heard what his attorney had said. In this
26  way, counsel and the court combined to instruct petitioner that he
27  was not really giving up the NGI plea and a sanity trial because
28  controlling case law said that he could withdraw the plea for the

duration of the guilt trial and then reinstate it later. Under
Bloom, Guerra and Medina, the trial court's error resided in its
endorsement of what trial counsel said about Guillebeau and its ac-
ceptance of petitioner's withdrawal of his NGI plea without making
it clear to petitioner that reinstatement of the NGI plea at a
later point in the trial was not automatic, that it required a
demonstration of good cause, and that the trial court had discret-
ion to determin that there was no good cause and to refuse to rei-
state the NGI plea. While the court did say it was not making any
commitment, this remark was too criptic to sufficiently explain to
petitioner that what his attorney had just said abuot Guillebeau
was wrong in portraying reinstatement as automatic and not subject
to any conditions.

For the above reasons, petitioner was denied his fundemental
rights to a fair trial,his due process rights and his rights to
equall protection guaranteed by the United States Constitution and
The California Constitution and petitioner respectfully requests
that this Honorable Court grant this Habeas Corpus Writ and or
any other relief it see's fit to correct the injustice that has
occured to petitioner to ensure Jurisprudence.

CLAIM 3 CONTINUED

1       The California Constitution Artical 1 § 16 and 24

2       Were Violated When The Trial Court Errord In Denying

3       Petitioner's Marsden Motion After Defense Counsel Con-

4       firmed On-The-Record That He Had Misadvised Petitioner

5       That He Could Withdraw His NGI Plea Without Risk Bec-

6       ause It Could Br Automatically Reinstated At Any Time

7

8            CLAIM 3 SUPPORTING FACTS CONTINUED

9

10 of his NGI plea, specifically stated that his attorney said when

11 they took the plea off that they could put it back on at any time.

12 On March 12,2004, petitioner filed a "Marsden" motion in which he

13 repeated this same complaint that defence counsel told him when they

14 took off the NGI plea that they could put it back on at any time and

15 that he did not know the court could deny it. Defense counsel res-

16 ponded at the Marsden hearing that he believed at the time they

17 withdrew the NGI plea that petitioner had the right to have that

18 plea reinstated, and confirmed that he told petitioner he had the

19 right to have the NGI plea reinstated based on his reading of the

20 Guillebeau case. In a second letter to the court, petitioner again

21 complained that the insanity plea should have never been taken off,

22 a complaint the trial court deferred to the hearing on petitioner's

23 motion for a new trial which the court denied.

24

25                      DISCUSSION

26

27    The California State Supreme Court has made it clear that when

28 a criminal defendant files a "Marsden" motion he is entitled to

1  relief in the form of the appointment of new counsel if the record
2  establishes that the first appointed attorney is not providing ade-
3  quate representation. (People v. Fierro (1991) 1 Cal. 4th 173, 204.)
4  Applying this standard, the record at petitioner's "Marsden" hear-
5  ing clearly showed his first appointed attorney had failed to pro-
6  vide adequate representation at the time petitioner withdrew his
7  NGI plea. Counsel forthrightly confirmed that, pursuant to his mis-
8  reading of Guillebeau, he had erroneously advised petitioner that
9  he had an automatic right to reinstate his NGI plea. This admission
10 by counselestablished that he had failed to provide constitution-
11 ally effective representation to petitioner at a critical stage of
12 the proceedings in violation of petitioner's rights under the Sixth
13 and Fourteenth Amendments to the United States Constitution and
14 under the California Constitution Artical 1 Section (s) 16 and 24.
15 It follows that petitioner was entitled to relief dictated under
16 People v. Marsden (1970) 2 Cal 3d 118.

17     The California Court of Appeals states that defense counsel's
18 misreading of Guillebeau does not establish ineffective assistance
19 of counsel because counsel made a reasonable tactical decision to
20 withdraw the NGI plea. (Slip opn., p. 13) What this analysis misses,
21 however, is that the ineffective assistance established at the
22 "Marsden" hearing was that trial counsel erroneously persuaded pet-
23 itioner to withdraw his NGI plea by misinforming him about the con-
24 sequences of the plea withdrawal. Counsel told petitioner that Gui-
25 llebeau said the withdrawal of his NGI plea had no consequences
26 because he could freely reinstate the plea later. While it may well
27 have been reasonable for counsel to recomend as a guilt phase tac-
28 tic that petitioner withdraw his NGI plea, it was entirely unreas-

1 onable for counsel to erroneously tell petitioner that he could do

2 so without risking his right to have a trial on his sanity. On this

3 record, the trial court's denial of petitioner's "Marsden" motion

4 violated petitioner's 6th and 14th Amendment Rights to The United

5 States Constitution and the California Constitution Artical 1 § 16

6 and 24, wherefore this great writ of habeas corpus by petitioner

7 deserves and respectfully requests grant of review and the approp-

8 riate relief it see's fit.

9

10                         Respectfully Submitted This
                           Day of May   , 2007   by

11                         John Duke SR P-97706

12                         John Duke Sr.

13

14

15

16

17

18

19

20

21

22

23 Date: 5-29-07
      cc: C-1-104 File

24

25

26

27

28

## PROOF OF SERVICE BY MAIL
### (C.C.P. §§1013 (A); 2015.5 & U.S.C. §1746)

I, John A. Duke Sr. declare that I _____ am a citizen of the state of California, County of Sacramento, over the age of eighteen years, and a party to the within cause. My address is: C-1- C.S.P. Sac IV , P.O. Box 29, Represa, California. 95671-0066

On May , 29 , 20 07  I served the original and/or true reproductions thereof of the following documents:

Petition For a Writ of Habeas Corpus

By mailing them to:   United States District Court for the Northern District
                      U.S. Courthouse
                      450 Golden Gate Avenue
                      San Francisco Ca 94102-3483

Said service was executed by placing said documents enclosed in a sealed envelope(s) with postage thereon fully prepaid, and depositing them in the United States Mail. At the time of the mailing there existed normal mailing service between the above parties.

I declare under the penalty of perjury, under the laws of the state of California that the foregoing is true and correct.

Executed on this 29th day of May , 20 07 , at Represa, California 95671

John Duke SR P97706
PRINT NAME

John Duke SR
SIGNATURE

P. 8