EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JOHN R. VANCE, JR., State Bar No. 51744
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5864
 Fax:  (415) 703-1234
 Email:  John.Vance@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **JOHN ANTHONY DUKE, SR.,** | C 07-2882 CW (PR) |
| Petitioner, | |
| v. | |
| **JAMES WALKER,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ANSWER TO ORDER TO SHOW CAUSE**

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JOHN R. VANCE, JR., State Bar No. 51744
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 703-5864
Fax:  (415) 703-1234
Email:  John.Vance@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOHN ANTHONY DUKE, SR.,** | C 07-2882 CW (PR) |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO ORDER TO SHOW CAUSE** |
| **v.** | |
| **JAMES WALKER,** | |
| Respondent. | |

**STATEMENT OF THE CASE**

By information filed July 5, 2001, the Contra Costa District Attorney charged petitioner with murder, with allegations that he used a deadly weapon, and committed the murder during the course of a robbery and burglary (Cal. Pen. Code, §§ 187, 190.2, subd. (a)(17) and 12022, subd. (b)(1)); elder abuse with use of a deadly weapon (Cal. Pen. Code, §§ 368. subd. (b)(1) and 12022, subd. (b)(1)); residential robbery (Cal. Pen. Code, §§ 211 and 211.5, subd. (a)); and residential burglary (Cal. Pen. Code, §§ 459 and 460, subd. (a)).  Exh. A, CT 152-154.

Appellant pled not guilty in July 2001, and entered an additional plea of not guilty by reason of insanity in March 2003.  Exh. A, CT 155-207.

Jury selection began on November 5, 2003.  Exh.A, CT 803-804.

1        On November 6, 2003, the court allowed petitioner to withdraw the NGI plea.  Exh. A, CT

2  806; Exh. B, RT 47-53.

3        On December 22, 2003, the jury convicted petitioner of first-degree murder and found true

4  the weapon use and robbery and burglary special circumstance allegations; and convicted petitioner

5  of elder abuse with weapon use, first-degree robbery and first-degree burglary.  Exh. A, CT 1189-

6  1196,  1237-1239; Exh. B, RT 2266-2271.

7        The court sentenced petitioner to life without the possibility of parole for the murder

8  count, plus a one-year enhancement for use of a deadly weapon.  The court imposed mid-term

9  sentences on the other counts and stayed those terms under California Penal Code section 654.  Exh.

10  A, CT 1318-1323; Exh. B, RT 2360-2361.

11        On February 9, 2006, the state court of appeal affirmed petitioner's convictions.  Exh. C.

12        On April 26,  2006, the state supreme court denied review.  Exh. D.

13        On June 4, 2007, petitioner filed the instant petition.

14        On June 19, 2007, this Court issued an order to show cause.

15                      **STATEMENT OF FACTS**

16        We take the statement of facts from the decision of the state appellate court:[1]  That

17  summary is presumed accurate.  *Hernandez v. Small*, 282 F.3d 1132, 1135, n. 1 (9th Cir. 2002).

18        The facts regarding the underlying crimes are only briefly set forth as the details are
not relevant to the issues raised by this appeal. Between 9:00 a.m. and 10:00 a.m. on July

19  18, 2000, a housekeeper at Bay Park Retirement Home (Bay Park) entered the apartment
of the 87-year-old victim. The apartment was in disarray and she alerted the manager.

20  Two police officers arrived and entered the apartment. The apartment had been ransacked and
there were bloodstains. The officers forced open a trunk, which contained the victim's dead body

21  underneath neatly folded clothes. An autopsy determined that the victim had died from blunt force
trauma, and multiple stab wounds to her face and head. Investigators found one fingerprint from

22  defendant's left index finger on a crumpled photograph in the apartment.

23        Two residents of Bay Park had seen defendant go to the victim's door on the weekend
before her body was found. The landlord of defendant's apartment building lived at Bay

24  Park. Prior to the finding of the victim's body, defendant had called his landlord and told
her not to mail his receipt and asked if he could personally get a rent receipt from her.

25        On July 17, 2000, the police were called when defendant attacked his friend with a
knife while the two men were installing an appliance in an apartment; the police arrested

26

27  ———————————————————————————————

28     1.  For record citations, see the statement of facts in our respondent's brief filed in the state
court of appeal. Exh. __.

1  defendant. The clothing of defendant was tested and it contained the extremely rare DNA
2  profile of the 87-year-old deceased victim. In addition, items belonging to the elderly
   victim were found at defendant's home. In an interview with the police officers, defendant
3  admitted killing the victim, but maintained that he did not have any control over his
   mind.FN3

4      FN3. At trial defendant testified that he did not remember entering the victim's
5      apartment and that he was taking drugs during the relevant time period.

6                              **STANDARD OF REVIEW**

7      A federal court may grant a writ of habeas corpus to a state prisoner only if the state

8  court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application

9  of, clearly established Federal law, as determined by the Supreme Court of the United States" or

10  were "based on an unreasonable determination of the facts in light of the evidence presented" in the

11  state courts.  28 U.S.C. § 2254(d).  Under the "contrary to" clause, a state court's decision is

12  contrary to federal law if it "contradicts the governing law set forth in our [United States Supreme

13  Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision

14  of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*,

15  529 U.S. 362, 405-06 (2000); That test does "not require citation of our cases -- indeed, it does not

16  even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court

17  decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  The ultimate

18  controlling authority is the Supreme Court's holding, as opposed to the dicta, of its decisions at the

19  time of the relevant state-court decision. *Williams v. Taylor,* 529 U.S. at 412.  The state courts are

20  presumed to "know and follow the law," and the standard for evaluating state-court rulings, which

21  are given the "benefit of the doubt," is "highly deferential." *Woodford v. Visciotti*, 537 U.S.19, 24

22  (2002) (per curiam).  In order to warrant habeas relief, the state court's application of clearly

23  established federal law must be not merely erroneous or incorrect but "objectively unreasonable."

24  *Williams v. Taylor*, 529 U.S. at 409; *see also Woodford v. Visciotti*, 537 U.S. at 25.  It is the habeas

25  petitioner's burden to make that showing.  *Id.*

26  ///

27  ///

28

1        **ARGUMENT**

2                                **I.**

3    **PETITIONER'S CLAIM THAT HE RECEIVED INEFFECTIVE
     ASSISTANCE OF COUNSEL IS NOT EXHAUSTED; IN ANY EVENT;
4    IT HAS NO MERIT**

5        **A.    Petitioner's Contention**

6        Petitioner claims petitioner received ineffective assistance of counsel when his trial

7    attorney "advised him that he could withdraw his NGI plea during trial and that it could be reinstated

8    at any time later automatically."  Petition, Claim I.  This claim is not exhausted.

9        **B.    This Claim Is Not Exhausted And Should Be Dismissed**

10       Petitioner did not raise this claim to the California Supreme Court, after the state court of

11   appeal's affirmed his conviction.  Exh. E.  In the supreme court, petitioner made two claims:

12       The court should grant review to resolve an important question of law on whether
         appellant voluntarily, knowingly and intelligently withdrew his NGI plea where the trial
13       court allowed his attorney to mistakenly lead him to believe case law said the NGI plea
         could be automatically reinstated later.
14

15   Exh.E (argument I).;

16       The court should grant review to resolve an important question of law on whether the trial
         court erred in denying appellant's *Marsden* motion after defense counsel confirmed he
17       had misadvised appellant that he could withdraw his NGI plea without risk because it
         could be automatically reinstated at any time.
18

19   Exh. E (argument II).

20       Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

21   sought to be presented in federal habeas corpus.  28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S.

22   270, 275 (1971); *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).  To satisfy the state exhaustion

23   requirement, the petitioner must fairly present his federal claims to the state's highest court. *Duncan*

24   *v. Henry*, 513 U.S. 364, 365 (1995).  A claim has not been fairly presented unless the prisoner has

25   described in the state court proceedings both the operative facts and the federal legal theory on

26   which his contention is based.  *See Gray v. Netherland,* 518 U.S. 152, 162-63 (1996 ); *Gatlin v.*

27   *Madding*, 189 F.3d 882, 888 (9th Cir. 1999); *Baldwin v. Reese*, 541 U.S. 27  (2004) (finding that

28   "ineffective assistance of appellate counsel" claim was not fairly presented to the state's highest

1  court because the petitioner did not properly alert the court to the federal nature of the claim).  In

2  *Kelly v. Small,* 315 F.3d 1063, 1069 (9th Cir. 2003), the Ninth Circuit stated as follows, "A thorough

3  description of the operative facts before the highest state court is a necessary prerequisite to

4  satisfaction of the standard . . . that a federal habeas petitioner [must] provide the state courts with

5  a "fair opportunity" to apply controlling legal precedent to the facts bearing upon his constitutional

6  claim."

7  　　　The claims presented to the California Supreme Court are related to the claim raised here,

8  but neither involved a Sixth Amendment violation.  Claim I focused on whether petitioner's

9  withdrawal of the NGI plea was knowing and voluntary, and Claim II was whether the trial court

10  erroneously refused to substitute counsel.  Accordingly, petitioner failed to present the same legal

11  theory to the California Supreme Court.  See *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)

12  (although factual basis for Fourth Amendment and Sixth Amendment claims were similar, the two

13  legal claims were different); *Jackson v. Coalter*, 337 F.3d 74, 86 (1st Cir. 2003).  Thus, this claim

14  should be dismissed.

15  **C.  The Claim Has No Merit**

16  　　　The Court may deny, but not grant, relief on an unexhausted claim.  28 U.S.C. § 2254 (d).

17  　　　In order to prevail on a claim of ineffective assistance of counsel, a defendant must show

18  both that counsel's conduct fell below a standard of objective reasonableness and that the defendant

19  was prejudiced by counsel's acts or omissions.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

20  The Ninth Circuit has referred to the *Strickland* standard as "very forgiving." *Delgado v. Lewis*, 223

21  F.3d at 981. The principles set forth in *Strickland* are "clearly established Federal law" under the

22  AEDPA.  See *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997).  Under the AEDPA, federal

23  courts have a "limited" scope of review with respect to claims raised on habeas regarding allegations

24  of ineffective assistance of counsel.  *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000).  Moreover,

25  in order to show prejudice, the defendant must show that counsel's errors were so serious as to have

26  deprived him of a trial whose result is fair or reliable, and not merely that the outcome would have

27  been different absent the errors.  *Strickland*, 466 U.S. at 694.  *Strickland* noted that a reviewing court

28  need not determine whether counsel's performance was deficient before examining the prejudice

1 | suffered by the defendant, and encouraged courts to dispose of ineffectiveness claims on the ground
2 | of lack of sufficient prejudice in appropriate cases. *Id.* at 697.

3 |     In the context of denying petitioner's *Marsden* (*People v. Marsden*, 2 Cal.3d 118 (1970))
4 | claim, the state court of appeal found that counsel had not been ineffective. We discuss petitioner's
5 | *Marsden* claim, *post*, in argument III. We explain why the state appellate court decision passed
6 | constitutional muster. For essentially the same reasons, petitioner's *Strickland* claim should be
7 | denied.

8 | <center>**II.**</center>

9 | **PETITIONER'S CLAIM THAT THE STATE CONSTITUTION WAS**
10 | **VIOLATED WHEN THE TRIAL COURT ACCEPTED THE**
   | **WITHDRAWAL OF HIS PLEA OF NOT GUILTY BY REASON OF**
   | **INSANITY DOES NOT STATE A BASIS FOR RELIEF ON HABEAS**
11 | **CORPUS**

12 |     **A.    Petitioner's Claim**

13 |     Petitioner claims that the *California* Constitution was violated "when the trial court erred
14 | in allowing [him] to withdraw his NGI plea without an adequate knowing and intelligent
15 | comprehension that he was likely giving up for all time his right to a jury trial on his sanity."
16 | Petition, claim II. Petitioner claims only a state law violation; thus, he has not stated a basis for
17 | federal habeas relief. Moreover, any error was harmless.

18 |     **B.    This Claim Should Be Dismissed Because It Does Not Assert A Violation Of**
19 | **Federal Law**

20 |     Petition claims only a violation of the state constitution. Consequently, his claim should
21 | be dismissed. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hinman v. McCarthy*, 676 F.2d 343,
22 | 349 (9th Cir. 1982) (alleged violation of the State Constitution raises no federal constitutional
23 | error). If the petition alleges only a violation of state law, no federal claim is presented and the
24 | petition is subject to dismissal for failure to state a claim. *See Howell v. Mississippi*, 543 U.S. 440
25 | (2005) (*per curiam*) (dismissing grant of certiorari following direct appeal where federal
26 | instructional issue was not raised on state appeal); *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir.
27 | 2004) (no federal habeas for state law errors whose combined effect does not violate the Federal
28 | Constitution); *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of Penal

Code section 654 does not state a federal question); *Stevenson v. Lewis*, 384 F.3d 1069 (9th Cir. 2004) (Sixth Amendment Vicinage Clause has not been extended to the states so a claim of state trial in the wrong county presents no federal question); *Branzburg v. Hayes*, 408 U.S. 665, 668 n.5 (1972) (Fifth Amendment right to proceed via indictment of a grand jury has not been applied to the states). The state court of appeal explained:

> On July 6, 2001, defendant entered a not guilty plea. Subsequently, on March 24, 2003, he also entered an NGI plea. The trial court appointed two doctors pursuant to Evidence Code section 730 to examine defendant.
> During the jury selection proceedings, the prosecutor expressed concern to the court that defendant was not fully advised of the consequences of an NGI plea. With the court's permission, the prosecutor explained those consequences. Defendant reaffirmed his NGI plea and defense counsel concurred in the plea.

> The trial court stated that it intended to inform prospective jurors of the NGI plea to allow counsel to voir dire on that subject. Defense counsel objected. He maintained that jurors would be prejudiced against the defense regarding defendant's mental state in the guilt phase, which would adversely impact his chances for a conviction of manslaughter rather than homicide. The court responded that, on appeal, it could be argued that defendant was deprived of having an opportunity to have a ""jury that had been oriented"" towards the possibility of sanity proceedings if the court followed defense counsel's suggestion. Defense counsel responded that he would be ""willing to acknowledge that on the record that it is a strategic decision on my part.""

> Defense counsel proceeded to explain: ""I will say that given-given the two recommendations, the two opinions of the doctors who were appointed in this case, that [defendant] was not insane at the time of the commission of the offense, that our chances of prevailing at the not guilty by reason of insanity at the sanity phase of the case are small. [¶¶] I-I recognize that, and I do not believe that given that small likelihood of success that he is giving up anything of substance by not having the jurors specifically voir dire on the issue of dealing with a not guilty by reason of insanity plea. Quite to the contrary, I think that having to address it during voir dire, that specific question during voir dire would draw-would place undue weight and draw undue attention to it, again, particularly given the likelihood of-of its success.

> ""To make it clear, we're-we're putting virtually all our eggs in the not guilty basket, the lesser basket, if you will. We're saving perhaps an egg or two for the not guilty by reason of insanity basket, but basically our principal thrust is for the mental health aspects, for the voluntary intoxication elements to lead to a finding of hopefully some form of manslaughter. That's-that's the-that's the principal thrust of our case. [¶¶] And I'm just extremely concerned, almost to the point of considering advising [defendant] to withdraw the plea, if the jury is-is informed that after they reach whatever verdicts they do with respect to guilt, that they will then deal with the issue of not guilty by reason of insanity. I think it confuses their task during the guilty phase.""

> The prosecutor strongly disagreed with defense counsel's position and argued that *Guillebeau, supra,* 107 Cal.App.3d 531, rejected this position. The court broke for lunch and, after lunch, defense counsel stated that he had read *Guillebeau* and he believed the case ""holds or explicitly stated ... that the NGI plea can be instituted at any point in the proceedings, and that the way the danger that the defense attorney in that case-the way it could have been avoided was simply by withdrawing the not guilty plea at the-at trial. [¶¶]

So based on that authority, it is our wish at this time, [defendant's] wish, to withdraw his not guilty by reason of insanity plea.""

The court asked defendant whether it was his desire to withdraw the NGI plea, and he responded that it was. The court stated that it ""is making no commitment of any type or kind at this time beyond accepting your withdrawal of that plea."" When asked whether he understood what the court had said, defendant responded, ""Yes."" The court accepted defendant's withdrawal of his NGI plea.

The trial commenced. While the jury was deliberating, on December 16, defense counsel stated that he wanted to address the possibility of his entering an NGI plea. He explained: ""It was withdrawn at the start of trial. It was-based on my reading of [ *Guillebeau* ] that was offered by the People, as I read it, basically said that it can be entered at any time during the proceedings, and in fact, suggested that the appropriate thing for the lawyer to have done in that case was to have entered it after the jury came back with their [*sic*] verdict....'" The prosecutor objected and stated ""[*Guillebeau*] says that it can be entered at any time for good cause shown. There is no good cause shown other than he did not want the DA or the People to be able to voir dire the jury on this....'" Defense counsel formally requested to enter an NGI plea; the court deferred the matter until the next day.

The following day, both parties filed points and authorities on the question of reinstating the NGI plea and their interpretation of *Guillebeau*. Defense counsel argued that good cause to reinstate an NGI plea was shown when an NGI plea was withdrawn to prevent jury voir dire on the sanity issue. The prosecutor argued that *Guillebeau* did not hold that a tactical withdrawal of the NGI plea at the beginning of jury selection constituted good cause for its later reinstatement. He maintained there was no good cause because both court-appointed psychologists concluded that defendant was legally sane. The prosecutor argued that the prosecution would never have the opportunity to voir dire on the issue of sanity in dual plea cases if the court upheld the defense's tactic.

Defense counsel acknowledged that both of the appointed psychologists had concluded that defendant was legally sane, but he argued their conclusions were based on a faulty premise that drug ingestion was the sole basis for the psychotic delusion. He said there was evidence of mental defects beyond drug ingestion. Defense counsel told the court that his tactical decision to have defendant withdraw his NGI plea was based on his belief that *Guillebeau* held that the defense's fears of prejudice constituted good cause for reinstating the withdrawn plea at the end of the trial.

The court stated that it would arraign defendant on the NGI plea, although it was not agreeing to necessarily accept it. Defendant was admonished of the consequences and he stated that he wished to enter an NGI plea.

The following day, on December 18, 2003, the court issued its written order denying the motion to reenter a plea of NGI. The court explained: ""At the commencement of this trial the defendant withdrew his plea of Not Guilty by Reason of Insanity. His counsel stated that this was done for ''tactical reasons.'' [¶¶] ... [¶¶] The court finds that no good cause has been shown, which would justify the re-entry of this plea. Nothing was developed in the course of the trial that would independently be a basis to reinstate the plea.""

On December 22, 2003, the jury returned its verdicts and found defendant guilty of first-degree murder (§§ 187) and found true that he used a deadly weapon (§§§§ 190.2, subd. (a)(17) & 12022, subd. (b)(1)) in the commission of this offense and during the course of a robbery (§§§§ 211 & 212.5) and a burglary (§§§§ 459-460). The jury also found defendant guilty of elder abuse with a deadly weapon. (§§§§ 368, subd. (b)(1) &

12022, subd. (b)(1).) Defendant was also convicted of residential robbery (§§§§ 211 & 212.5, subd. (a)) and residential burglary (§§§§ 459 & 460, subd. (a)).

On February 9, 2004, defendant wrote the trial court that he did not understand what had happened in his case. Referring to the NGI issue, he stated: "'On the insanity plea thing my attorney said when we took it off that we could put it back on at any time.'"

On March 12, 2004, defendant filed a *Marsden* motion, which the trial court heard that same day. At the hearing, defendant stated: "'And on the insanity plea, all [defense counsel] told me when-when we went to go take it off, he said I can put it back on at any time. I didn't know that it would be up to you to-that you could deny it or not. I-I just really don't understand a lot of this stuff.'" Defense counsel stated that he believed at the time defendant withdrew the NGI plea, and still believed, that defendant had the right to have that plea reinstated. He stated that he had told defendant that he had the right to have the NGI plea reinstated.

The trial court denied the *Marsden* motion. The court explained in pertinent part: "'It doesn't seem to me that in any degree whatsoever that you didn't have a proper understanding of what was taking place here, that [defense counsel] performed admirably in your behalf. Quite frankly, admirably. He made a stirring closing argument, which he really brought to the jury's attention here how important it was for them to understand your mental state, which he has presented through his two expert witnesses. So I find no legal basis for discharging your attorney.'"

Defendant moved for a new trial. Defendant also filed a second *Marsden* motion, which the court denied on May 7, 2004. Defendant wrote a second letter to the trial court, which stated: "'Because I know I have problems your Honor the insanity plea should have never been taken off and I swear I do not remember but if I did do something like this I am sick very sick and you can put me on the moon but I will still be very sick. I need the truth, a fair plea and if found guilty I need psychiatric help. I need a jury to help me decide that.'"

At the hearing on the motion for a new trial on May 29, 2004, defense counsel argued that *Guillebeau* held that the tactical withdrawal of defendant's NGI plea based on fear the jurors' knowledge of this plea would prejudice their guilt determination constituted good cause for reinstating the NGI plea at the end of the trial. The trial court stated that it was clear that defense counsel made a tactical decision. Further, defendant's mental status was clearly presented as an issue during the guilt phase of the trial. The court stated that it could not see how defendant was prejudiced. The court explained: "'Because, if the evidence that was presented didn't rise to the level of indicating that the defendant didn't have the capacity to form the necessary intent for these respective crimes, based on the evidence that the jury heard, it's hard for me to visualize how he could be prejudiced by not having a formal not guilty by reason of insanity plea. [¶¶] The court is not indicating that the standards are the same....'" However, based on the evidence presented on defendant's mental state at the guilt phase of the trial, the court found no prejudice and denied the motion for a new trial.

. . .

Defendant contends that the trial court erred in accepting his withdrawal of his NGI plea because he did not withdraw it voluntarily, knowingly, and intelligently. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244 (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*); *Morgan v. Bunnell* (9th Cir.1994) 24 F.3d 49, 52.) Defendant argues that his trial counsel misread the holding in *Guillebeau, supra,* 107 Cal.App.3d 531 and therefore advised him to withdraw the NGI plea presuming that it could later be reinstated.

1    In *Boykin, supra,* 395 U.S. 238, the United States Supreme Court held that an appellate court may not presume from a ""silent record"" that a defendant has voluntarily

2    and intelligently waived the constitutional rights which he or she implicitly relinquishes by entering a plea of guilty. Similarly, our Supreme Court in *Tahl, supra,* 1 Cal.3d 122

3    construed *Boykin* to require the record to reveal ""on its face"" that the record show explicit advisements and waivers of constitutional rights.

4

5    Defendant *concedes that a trial court does not need to obtain full Boykin-Tahl waivers from a defendant seeking to withdraw an NGI plea* when the court has no doubt concerning the defendant's sanity and the reports of the examining psychiatrists

6    unanimously concluded that he was sane at the time of the offense. (*People v. Guerra* (1985) 40 Cal.3d 377, 383-384.) Although he expends a significant amount of time

7    distinguishing the facts of the present case from those in *Guerra,* we are not concerned with any factual differences because defendant expressly concedes he is not arguing the

8    court erred by not obtaining *Boykin-Tahl* waivers. Rather, defendant asserts ""that the trial court erroneously allowed him to withdraw his NGI plea in the face of clearly mistaken

9    representations from his attorney that said controlling precedent allowed him to withdraw the NGI plea for tactical reasons without prejudice to reinstating it at a later point in the

10   trial proceedings.""

11   Without any citation to authority, defendant argues that his attorney's ""clearly misguided reliance on *Guillebeau* imposed a duty on the trial court to expressly warn

12   [defendant] that any reinstatement of his NGI plea would not be automatic but would depend on establishing good cause. The trial court's failure to give that warning resulted

13   in [defendant] making a decision that was not voluntary, knowing and intelligent because it was made without a full understanding that he might never be allowed to reinstate his

14   NGI plea.""

15   Defendant is essentially arguing that a trial court has a sua sponte duty to tell a defendant who is withdrawing his NGI plea with the advice of counsel that counsel's

16   tactical decision is predicated on what the court perceives is a misapprehension of the law. No case stands for such a proposition.

17

18   By attempting to create a new duty for the trial court, defendant has attempted to avoid strong precedent that rejects the issue he has raised in this appeal. Indeed,

19   involuntariness based upon advice of counsel is reviewed as a claim of ineffective assistance. (See, e.g., *Hill v. Lockhart* (1985) 474 U.S. 52, 56.) However, defendant insists

20   that his argument is not based on inadequate advice of his counsel, but on a duty of the court to tell him that his counsel's tactical decision to withdraw the NGI plea is based on

21   a possibly flawed reading of a case.

22   *Defense counsel wants this court to create a rule that expands the scope of the court's duty to admonish far beyond the advisements required by Boykin-Tahl.* By

23   withdrawing his NGI plea, defendant did not give up any constitutional rights; he had previously been informed that he could spend the rest of his life in a mental institution as

24   a result of an NGI plea. Moreover, the trial court expressly told defendant and his counsel that the court was ""making no commitment of any type or kind at this time beyond

25   accepting your withdrawal of that plea."" Defendant responded that he understood what the court said. Thus, the court made it clear that it was not agreeing that it would

26   automatically permit defendant to reenter his NGI plea at a later time and the court had no obligation to correct defense counsel's interpretation of what constitutes good cause.

27   Defendant contends that the court failed to advise him of the consequences of his action, but no authority provides that a court must advise a defendant of *all* consequences of an

28   action. There are always consequences to the withdrawal of a plea and the court does not have a duty to advise a defendant of all consequences; the court does not have any duty

to clarify that it believes trial counsel is misreading a case.

Further, *any admonishments that are not constitutionally compelled are a* "*"judicially declared rule of criminal procedure.*"" (See, e.g., *In re Ronald E.* (1977) 19 Cal.3d 315, 320-321, disapproved on other grounds in *People v. Howard* (1992) 1 Cal.4th 1132, 1178-1179.) Thus, when the admonishment is not in the record and is not one which is constitutionally compelled, the Supreme Court has employed the *Watson* test. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) In the present case defendant suffered no prejudice as a result of the court's permitting him to withdraw his plea. As defense counsel conceded at trial, defendant's "*"chances of prevailing at the not guilty by reason of insanity at the sanity phase of the case are small*"" since both of the experts appointed by the court found defendant legally sane. Further, the jurors rejected the evidence of defendant's mental state presented at trial to create a reasonable doubt about his specific intent to commit a robbery or burglary. As the trial court stated, this indicates it was highly unlikely that a jury would find him insane.

Finally, we note that defendant cannot establish that he would not have withdrawn his NGI plea had his counsel told him that the court would not necessarily reinstate this plea later in the proceedings. Defendant's counsel made it clear that he was concerned about the prejudicial effect of having voir dire on the question of sanity, since he believed that it could diminish defendant's chances of having the jury come back with a manslaughter verdict rather than a first-degree murder conviction. It is clear on this record that defense counsel believed there was little chance that defendant would be deemed insane in the sanity phase of the trial; he believed that defendant's best strategy was to present evidence of mental incapacity in the guilt phase of the trial with a jury that was unaware of any sanity issue.[FN4] In fact, counsel told the court prior to the break and prior to his reading (or rereading) of *Guillebeau* that, if the insanity issue was going to be addressed during voir dire, he was "*"extremely concerned, almost to the point of considering advising [defendant] to withdraw the [NGI] plea[.]*"" Thus, given the choice of having voir dire on insanity and having an NGI plea, defense counsel indicated that his tactical decision would have been to withdraw the NGI plea. Trial counsel clearly did not want the jurors who were determining defendant's guilt to be questioned about the question of insanity, especially since he considered his evidence in support of the NGI plea very weak and having almost no chance of success.

FN4. The People also argue that defendant has waived raising the issue of involuntariness, because he never raised it in the trial court. Rather, defendant moved the court to allow him to enter an NGI under section 1016. In order to avoid any ineffective of assistance claim, we address the merits of defendant's claim and therefore we need not reach the issue of waiver.

We reject defendant's argument that the trial court had a duty to inform him that it believed his counsel's advice to withdraw the NGI plea was based on a misreading of a case. Further, we also conclude that defendant cannot establish prejudice.

Exh. C.

Thus, petitioner conceded in the state appellate court that there was no federal constitutional violation in the procedure that led to the withdrawal of his not guilty by reason of insanity. Exh. C ("Defendant *concedes that a trial court does not need to obtain full Boykin-Tahl waivers from a defendant seeking to withdraw an NGI plea* when the court has no doubt concerning the defendant's sanity and the reports of the examining psychiatrists unanimously concluded that he

1   was sane at the time of the offense.")  Nor has the United States Supreme court held that the trial

2   court has a sua sponte duty to advise a represented defendant in connection with the withdrawal of

3   an NGI plea.  28 U.S.C. § 2254 (d).  See *Carey v. Musladin*, 127 S.Ct. 649, 653-654 (2006).

4          Even if such a duty existed, any error was harmless.  Both experts found petitioner sane,

5   and counsel conceded there was little likelihood the jury would have concluded he was insane.

6   Further, counsel's primary defense at trial was voluntary intoxication, and he clearly believed it

7   would be detrimental to that issue to alert the jury on voir dire to the sanity issue.  Thus, petitioner

8   may well have withdrawn the NGI plea even if the trial court had advised him that he could not raise

9   it again at a later time.

10                                          **III.**

11          **PETITIONER'S CLAIM THAT THE STATE CONSTITUTION WAS
        VIOLATED DOES NOT STATE A FEDERAL ISSUE; IN ANY EVENT,**
12      **THE DECISION OF THE STATE COURT OF APPEAL THAT THE
        TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT**
13      **DENIED PETITIONER'S *MARSDEN* MOTION WAS NOT CONTRARY
        TO, NOR DOES IT UNREASONABLY APPLY, UNITED STATES**
14      **SUPREME COURT AUTHORITY.**

15      **A.    Petitioner's Contention**

16          Petitioner claims that the *state* constitution was violated when the "trial court errored in

17  denying [his] *Marsden* motion after defense counsel confirmed on-the-record that he had misadvised

18  petitioner that he could withdraw his NGI plea without risk because it could be automatically

19  reinstated at any time."  Petition, pp. 13, claim III.  His claim should be dismissed because it does

20  not state a federal constitutional basis.  In any event, it has no merit.

21      **B.    The Claim Should Be Dismissed Because It Does Not Assert A Violation Of
              Federal Law**
22

23          Petition claims only  a violation of the state constitution.  Consequently, his claim should

24  be dismissed.  *Hinman v. McCarthy, supra*, 676 F.2d at 349 (alleged violation of the State

25  Constitution raises no federal constitutional error); see also other cases cited *ante*.

26      **C.    The Claim Has No Merit**

27          **1.    The State Court Of Appeal's Decision Rejecting Petitioner's Claim**

28          The state court of appeal rejected petitioner's claim:

---

Memo. of Points & Authorities in Support of Answer, etc.;          *Duke v. Walker* - C 07-2882 CW (PR)

                                          12

1

2

3

Defendant contends that the trial court erred in denying his *Marsden* motion after his counsel confirmed that he believed *Guillebeau* held that he could withdraw his NGI plea without risk because it could be automatically reinstated at any time. We conclude that the court did not abuse its discretion in denying this motion.

4

5

6

7

8

9

A defendant represented by the public defender's office may request discharge of his or her attorney and substitution of a new attorney, known as a *Marsden* motion, if the defendant's right to counsel would be substantially impaired by continuing with the original attorney. (*Marsden, supra,* 2 Cal.3d at p. 123.) A defendant must establish that counsel is not providing adequate representation or that the defendant and counsel "''have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'' "" (*People v. Mayfield* (1997) 14 Cal.4th 668, 795.) When a defendant requests substitution of counsel, the court must conduct a hearing to listen to the reasons for the request in order to consider the request intelligently. (*Marsden, supra,* at pp. 123-124.) While the trial court's failure to hear a defendant's request for substitution of appointed counsel is prejudicial per se (*People v. Hill* (1983) 148 Cal.App.3d 744, 755), the court's ruling on a *Marsden* motion is reviewed for an abuse of discretion. (*People v. Memro* (1995) 11 Cal.4th 786, 857.)

10

11

12

13

In the present situation, the trial court held a hearing on each of defendant's *Marsden* motions and we therefore apply the abuse of discretion standard of review. (*People v. Memro, supra,* 11 Cal.4th at p. 857.) "'''Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "'substantially impair'" the defendant's right to assistance of counsel.'' ""(*People v. Horton* (1995) 11 Cal.4th 1068, 1102.)

14

15

16

Defendant argues that his trial counsel erroneously advised him that he had an automatic right to reinstate his NGI plea and defendant's only possible method for remedying this erroneous advice was to have a new attorney argue for a new trial based on ineffective assistance of counsel. This is defendant's sole argument.

17

18

19

20

21

22

23

24

25

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's conduct fell below a standard of objective reasonableness and that the defendant was prejudiced by counsel's acts or omissions. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) As discussed *ante,*defense counsel made a reasonable tactical decision to withdraw the NGI plea. Simply because defense counsel at trial may have misread the holding of *Guillebeau* does not establish ineffective assistance of counsel. Courts and counsel often disagree over the holding of cases; appellate defense counsel may now concur with the trial court and prosecution's interpretation of *Guillebeau* but that does not make defense counsel's interpretation "''objectively unreasonable.''" Further, as we have already stressed in part I., even if defense counsel had interpreted *Guillebeau* as holding there were no guarantees that the NGI plea could be reinstated,[FN5] it is still likely that he would have recommended that defendant withdraw his NGI plea. Given the opinions of two experts appointed by the court that defendant was legally sane when he committed the offenses, a recommendation to withdraw the NGI plea was a sound tactical decision. Finally, given these experts' opinions and the jury's rejection of the mental incapacity evidence at the guilt phase, combined with defense counsel's acknowledgment that no additional evidence had come to light after defendant had withdrawn his NGI plea to indicate defendant was insane, defendant cannot establish prejudice.

26

27

FN5. Defense counsel was given this advisement by the trial court. The trial court expressly stated it was making no guarantees.

28

Exh. C.

1          **2.  Discussion**

2          The Sixth Amendment does not encompass the right to a "meaningful attorney-client

3  relationship," since no court can guarantee that a defendant will develop a certain level of rapport

4  with counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1982). The essential aim of the Sixth Amendment

5  is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a

6  defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*,

7  486 U.S. 153, 159 (1988).

8          The Ninth Circuit has stated, "to compel one charged with grievous crime to undergo a

9  trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict

10  is to deprive him of the effective assistance of any counsel whatsoever." *Brown v. Craven*, 424 F.2d

11  1166, 1170 (9th Cir. 1970). Thus, if a defendant expresses dissatisfaction with counsel, the court

12  should conduct an inquiry to determine if an irreconcilable conflict exists. *Id*. "However, not every

13  conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."

14  *Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc). On federal habeas review, the issue

15  is not whether the trial court abused its discretion in denying a motion to substitute counsel, but

16  whether the conflict between the defendant and his attorney prevented effective assistance of

17  counsel. *Id*. at 1026. Unless the conflict results in constitutionally ineffective assistance of counsel

18  under *Strickland v. Washington*, 466 U.S. 668 (1984), habeas relief is unwarranted. *Id*.

19          To resolve this question, the court must ascertain "(1) the nature and extent of the conflict

20  between [petitioner] and his attorney, and (2) whether that conflict deprived [petitioner] of the

21  representation to which he was entitled by the Sixth Amendment." *Schell v. Witek,* 218 F.3d at

22  1027. In order for substitution of counsel to be constitutionally compelled, there must be a complete

23  breakdown in communication; mere friction and disagreement does not require new counsel. *United*

24  *States v. George,* 85 F.3d 1433, 1439 (9th Cir. 1996) (defendant claimed counsel was prejudiced

25  against him, "didn't like" him, and had communication problem; evidence showed that although he

26  was a "difficult client," the lines of communication between defendant and counsel remained open);

27  *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991) (defendant's reaction to counsel's

28  recommendation that he accept plea bargain resulted in "disturbed" relationship, but they continued

1 | to confer about case).

2 |      Petitioner has not shown that he received ineffective assistance of counsel in this case,

3 | thus, the denial of the *Marsden* motion did not violate the Constitution.

4 |      Here, the state appellate court found the basis of the *Marsden* claim was the assertion that

5 | counsel was ineffective because he misadvised petitioner as to whether he could reinstate his not

6 | guilty plea.  However, the court found that the disagreement between counsel and the trial court over

7 | the scope of Guillebeau did not establish that counsel's performance was unreasonable.  Nor was

8 | counsel's strategic decision to withdraw the NGI plea so as not to distract the jury from the primary

9 | defense of intoxication an unreasonable decision, even if it could not be reasserted later.  Counsel

10 | recognized that the insanity plea had little chance of success.  And for that reason, petitioner cannot

11 | demonstrate prejudice.  The state court's conclusion that counsel was not constitutionally ineffective

12 | was not unreasonable.  See *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

13 | **CONCLUSION**

14 |      Accordingly, for the reasons stated, respondent respectfully requests that the petition for

15 | writ of habeas corpus be denied.

16 |      Dated:  October 18, 2007

17 |                      Respectfully submitted,

18 | EDMUND G. BROWN JR.<br>Attorney General of the State of California

19 | DANE R. GILLETTE<br>Chief Assistant Attorney General

20 | GERALD A. ENGLER<br>Senior Assistant Attorney General

21 |

22 | PEGGY S. RUFFRA<br>Supervising Deputy Attorney General

23 |

24 | /s/ John R. Vance, Jr.

25 | _____<br>JOHN R. VANCE, JR.<br>Deputy Attorney General

26 | Attorneys for Respondent

27 | 20109462.wpd

28 | SF2007401683;  JRV:je

Memo. of Points & Authorities in Support of Answer, etc.;       *Duke v. Walker* - C 07-2882 CW (PR)

15

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ..................................................................... 1

STATEMENT OF FACTS ......................................................................... 2

STANDARD OF REVIEW ......................................................................... 3

ARGUMENT ......................................................................................... 4

I.   PETITIONER'S CLAIM THAT HE RECEIVED INEFFECTIVE
     ASSISTANCE OF COUNSEL IS NOT EXHAUSTED; IN ANY
     EVENT; IT HAS NO MERIT ............................................................. 4

     A.   Petitioner's Contention ........................................................... 4

     B.   This Claim Is Not Exhausted And Should Be Dismissed .............. 4

     C.   The Claim Has No Merit ......................................................... 5

II.  PETITIONER'S CLAIM THAT THE STATE CONSTITUTION
     WAS VIOLATED WHEN THE TRIAL COURT ACCEPTED
     THE WITHDRAWAL OF HIS PLEA OF NOT GUILTY BY
     REASON OF INSANITY DOES NOT STATE A BASIS FOR
     RELIEF ON HABEAS CORPUS ......................................................... 6

     A.   Petitioner's Claim ................................................................. 6

     B.   This Claim Should Be Dismissed Because It Does Not Assert A Violation Of
          Federal Law ......................................................................... 6

III. PETITIONER'S CLAIM THAT THE STATE CONSTITUTION
     WAS VIOLATED DOES NOT STATE A FEDERAL ISSUE; IN
     ANY EVENT, THE DECISION OF THE STATE COURT OF
     APPEAL THAT THE TRIAL COURT DID NOT ABUSE ITS
     DISCRETION WHEN IT DENIED PETITIONER'S *MARSDEN*
     MOTION WAS NOT CONTRARY TO, NOR DOES IT
     UNREASONABLY APPLY, UNITED STATES SUPREME
     COURT AUTHORITY. .................................................................... 12

     A.   Petitioner's Contention ........................................................... 12

     B.   The Claim Should Be Dismissed Because It Does Not Assert A Violation Of
          Federal Law ......................................................................... 12

     C.   The Claim Has No Merit ......................................................... 12

          1.   The State Court Of Appeal's Decision Rejecting Petitioner's Claim ... 12

          2.   Discussion ..................................................................... 14

CONCLUSION ...................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Baldwin v. Reese*
541 U.S. 27  (2004)                                                     4

5

*Branzburg v. Hayes*
6   408 U.S. 665 (1972)                                                    7

7

*Brown v. Craven*
424 F.2d 1166 (9th Cir. 1970)                                           14

8

*Carey v. Musladin*
9   127 S.Ct. 649, 653-654 (2006)                                         12

10

*Dows v. Wood*
211 F.3d 480 (9th Cir. 2000)                                            5

11

*Duncan v. Henry*
12   513 U.S. 364 (1995)                                                   4

13   *Early v. Packer*
537 U.S. 3 (2002)                                                       3

14

*Estelle v. McGuire*
15   502 U.S. 62 (1991)                                                    6

16   *Gatlin v. Madding*
189 F.3d 882 (9th Cir. 1999)                                           4

17

*Gray v. Netherland*
18   518 U.S. 152 (1996 )                                                  4

19   *Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002)                                           2

20

*Hinman v. McCarthy*
21   676 F.2d 343 (9th Cir. 1982)                                       6, 12

22   *Howell v. Mississippi*
543 U.S. 440 (2005)                                                    6

23

*Jackson v. Coalter*
24   337 F.3d 74 (1st Cir. 2003)                                          5

25   *Johnson v. Zenon*
88 F.3d 828 (9th Cir. 1996)                                            4

26

*Kelly v. Small*
27   315 F.3d 1063 (9th Cir. 2003)                                        5

28

**TABLE OF AUTHORITIES** **(continued)**

Page

*Kimmelman v. Morrison*
477 U.S. 365 (1986)                                                                      5

*Morris v. Slappy*
461 U.S. 1 (1982)                                                                       14

*Parle v. Runnels*
387 F.3d 1030 (9th Cir. 2004                                                              6

*People v. Marsden*
2 Cal.3d 118 (1970)                                                                6, 12, 15

*Picard v. Connor*
404 U.S. 270 (1971)                                                                      4

*Schell v. Witek*
218 F.3d 1017 (9th Cir. 2000)                                                            14

*Stevenson v. Lewis*
384 F.3d 1069 (9th Cir. 2004)                                                             6

*Strickland v. Washington*
466 U.S. 668 (1984)                                                                  5, 6, 14

*United States v. George*
85 F.3d 1433 (9th Cir. 1996)                                                            14

*United States v. Schaff*
948 F.2d 501 (9th Cir. 1991)                                                            14

*Watts v. Bonneville*
879 F.2d 685 (9th Cir. 1989)                                                             6

*Wheat v. United States*
486 U.S. 153 (1988)                                                                     14

*Williams v. Taylor*
529 U.S. 362 (2000)                                                                      3

*Woodford v. Visciotti*
537 U.S.19 (2002)                                                                        3

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                                  6, 12, 15

**Statutes**

28 United States Code
        § 2254, subd. (b)                                                                4
        § 2254, subd. (d)                                                           3, 5, 12

**TABLE OF AUTHORITIES  (continued)**

                                                                    **Page**

California Penal Code
        § 187                                                          1
        § 190.2, subd. (a)(17)                                         1
        § 211                                                          1
        § 211.5, subd. (a)                                             1
        § 459                                                          1
        § 460, subd. (a)                                               1
        § 654                                                        2, 6
        § 12022, subd. (b)(1)                                          1


**Other Authorities**

Antiterrorism and Effective Death Penalty Act                          5

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **John A. Duke,  Sr. v. James Walker**                    No.: **C 07-2882 CW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>October 18, 2007</u>, I served the attached:

**1.  ANSWER TO ORDER TO SHOW CAUSE;
2.  MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
ANSWER TO ORDER TO SHOW CAUSE; and 3.  LODGING OF EXHIBITS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

John A. Duke, Sr.
P-97706
C.S.P. Sac IV
P.O. Box 290006
Represa, CA 95671-0066

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 18, 2007, at San Francisco, California.

|                   |                   |
|:-----------------:|:-----------------:|
| J. Espinosa       | /s/  J. Espinosa  |
| Declarant         | Signature         |

20109667.wpd